UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE FANUCCI, | No. C-08-2151 EMC |
| Plaintiff, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| ALLSTATE INSURANCE COMPANY, *et al.*, | |
| Defendants. | |

A Final Pretrial Conference was held in this matter on November 17, 2009. Pursuant to Federal Rule of Civil Procedure 16(e), this order memorializes the Court's rulings and/or the parties' stipulations.

## I. TRIAL DATE & LENGTH OF TRIAL

A. The trial shall begin on November 30, 2009, Courtroom D, 15th Floor. There shall be a total of four court days. The first day of trial, *i.e.*, November 30, shall be held from 8:30 a.m. to 4:30 p.m. The subsequent trial days shall be held from 8:30 a.m. to 1:30 p.m.

B. Plaintiffs shall have six (6) hours to present their evidence, and Defendant six (6) hours. This includes direct examination by one side of its witnesses, cross-examination by that side of the opposing party's witnesses, and any rebuttal. This does not include jury selection, jury instructions, opening statements, or closing arguments.

///

///

///

## II. PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A. No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness. If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections. The Court will then schedule a conference that afternoon or the following morning to resolve the dispute.

B. With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by November 25, 2009, at 9:00 a.m. If any such exhibits are still objected to, both counsel shall notify the Court by 8:30 a.m., November 30, 2009, and shall identify the exhibits at issue and the objections. Counsel should notify the Court via e-filing *and* via fax at (415) 522-4200. The Court will then address the dispute on the first day of trial before any testimony begins.

C. If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day. The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

## III. PROCEDURE FOR WITNESSES AT/DURING TRIAL

A. Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness. At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case. No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal) unless otherwise ordered by the Court.

B. Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order. Counsel should give opposing counsel reasonable notice (at least one day) with respect to which witnesses will be testifying on a particular day. Witnesses may be taken out of order if necessary. Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

1  C. Only one lawyer for each party may examine any single witness.

2  D. If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the court reconvenes. If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

E. Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court. The Court may read to the jury such undisputed facts at appropriate points in the trial.

F. Immediately before each new witness takes the stand, counsel calling the witness shall place on the witness stand a clearly marked copy of each exhibit that counsel expects to have the witness refer to during his or her direct examination. Immediately before beginning cross-examination, counsel conducting cross-examination shall do the same with any additional exhibits to be referenced on cross.

G. If counsel intends to have the witness draw diagrams or put markings on visual exhibits or diagrams prepared by the party calling the witness, the witness shall do so before taking the stand. Once on the stand, the witness shall adopt the diagrams and/or markings and explain what they represent. If the diagram or visual exhibit is prepared by the opposing party, the witness shall not make any markings on the diagram or visual exhibit without leave of the Court.

### IV.  OTHER PROCEDURES AT/DURING TRIAL

A. To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or irrelevant). There shall be no speaking objections or argument from either counsel unless requested by the Court. Only one counsel may make objections for each witness.

B. Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances. Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*. Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

///

///

## V.    **PLAINTIFF'S MOTION IN LIMINE**

A.    <u>Plaintiff's Motion in Limine to Exclude Testimony or Argument Concerning Robert Fanucci's Disposal of Declaration Pages (Docket No. 77)</u>

Plaintiff has moved to exclude any testimony or argument concerning Robert Fanucci's disposal of declaration pages for the Allstate insurance policies. Plaintiff contends that the testimony or argument is not relevant because she has admitted that her father Robert Fanucci received the documents. *But see* Joint Pretrial Conf. St. at 1-3 (not listing that fact as an undisputed fact; simply listing as an undisputed fact that Defendant mailed declaration pages to the Fanuccis). She also argues that, even if the testimony or argument is relevant, it should be excluded as highly prejudicial. In response, Defendant argues that Robert Fanucci's disposal of the documents constitutes spoliation and that it is therefore entitled not only to introduce the evidence about the spoliation but also have an adverse inference instruction read to the jury.

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). However, the fact of spoliation itself does not necessarily give rise to a remedy for the nonspoiling party. Generally, a court must inquire whether the nonspoiling party has suffered prejudice as a result of the spoliation. "The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'" *Id.* (noting that, in a prior case, prejudice was found "when a party's refusal to provide certain documents 'forced [the nonspoiling party] to rely on incomplete and spotty evidence' at trial").

As a preliminary matter, the Court notes that Robert Fanucci is not a party to this lawsuit. That does not mean, however, that Plaintiff cannot be held accountable for Robert Fanucci's destruction of documents. Robert Fanucci is Plaintiff's father; he was the one to initiate the claim process with Defendant; and clearly he has had a significant hand in Plaintiff's claim throughout the dealings with Defendant. Given these circumstances, it is appropriate for the Court to rely on its inherent powers to sanction Plaintiff if her father did in fact engage in improper litigation practices. *See id.* at 958 (noting that one of the sources of "authority under which a district court can sanction a

party who has despoiled evidence [is] the inherent power of federal courts to levy sanctions in response to abusive litigation practices").

Turning to the question of whether Robert Fanucci engaged in the spoliation of evidence, the Court must first establish when his duty to preserve evidence was triggered. That essentially turns on when Robert Fanucci reasonably anticipated litigation. *See Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06-3359 JF (RS), 2009 U.S. Dist. LEXIS 62668, at *15-16 (N.D. Cal. July 2, 2009). Although arguably Robert Fanucci did not reasonably anticipate litigation when he first filed the claim with Allstate, it is clear that, by 2002, he knew there was a coverage dispute with Allstate. *See* Docket No. 48 (Martin Decl., Ex. E) (Hinton Depo., Ex.) (letter, dated 3/5/2002, from Allstate to Mr. Hinton) (stating that the umbrella policy contained no UIM coverage). Thus, as of that point, he had a duty to preserve. It is also clear that, in spite of knowing that there was a coverage dispute with Defendant, Robert Fanucci thereafter destroyed at least some insurance documents. *See* Docket No. 99 (Tran Decl., Ex. B) (Robert Fanucci Depo. at 138-40). Thus, the Court concludes that Robert Fanucci did improperly destroy documents. The only question remaining is whether Defendant is entitled to a remedy as a result of the spoliation.

A nonspoiling party may be given a remedy because of the offending party's spoliation, even if the offending party did not destroy the evidence in bad faith. *See Unigard Sec. Ins. Co. v. Lakewood Eng'r & Mfg. Corp.*, 982 F.2d 363, 368 n.2 (9th Cir.1992) (stating that a court may use its inherent powers to sanction not only for bad faith but also for willfulness or mere fault by the offending party); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (emphasizing that bad faith is not required to sanction; sanction may issue simply because of offending party's notice of potential relevance to the litigation). However, as noted above, whether a remedy is appropriate ultimately turns on whether the nonspoiling party has been prejudiced as a result of the spoliation. Plaintiff argues that Defendant has not been prejudiced because all that was destroyed were documents that Defendant maintains in its own records. Defendant in turn argues that it is not even clear what documents were destroyed. *Cf. Leon*, 464 F.3d at 959 (stating that, "because 'the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no

longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents'").

Based on the deposition testimony of Robert Fanucci, it appears that the documents that were destroyed were likely documents maintained by Defendant in its own records. Even if Defendant did not have all of the declaration pages in original form, it has at least one of them as well as the pertinent information in other forms. Thus, there has been no substantial prejudice to Defendant as a result of the spoliation. But Defendant should not be foreclosed from presenting any evidence that Robert Fanucci disposed of insurance documents because such evidence could bolster Defendant's contention that it was not reasonable for Robert Fanucci to rely on the alleged misrepresentations by Mr. Baldwin when the umbrella policy documents in his possession clearly reflected that only third-party liability was covered. In short, Defendant should be able to present the jury Robert Fanucci's disposal of the documents. The parties can argue to the jury what inference, if any, may be drawn therefrom.

The Court will not, however, give an adverse inference instruction. There is insufficient evidence of a willful act of spoliation to warrant the Court's imprimatur of such an instruction. Furthermore, even though Robert Fanucci destroyed some insurance documents, as noted above, Defendant still has at least some of those documents (or comparable documents) to show to the jury so the specific instruction requested by Defendant makes little sense. *See* CACI 204 ("You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party.").

Taking into account the competing considerations, the Court concludes that the proper balance is to permit Defendant to introduce evidence of the destruction of evidence but to reject the reading of an adverse inference instruction to the jury. The Court therefore **GRANTS** in part and **DENIES** in part Plaintiff's motion in limine.

### VI. DEFENDANT'S MOTIONS IN LIMINE

A. Defendant's Motion in Limine No. 1 to Exclude or Limit Expert Testimony of Brian Gagan (Docket No. 85)

Defendant has moved to exclude or limit the testimony of Brian Gagan, Plaintiff's expert. Plaintiff intends for Mr. Gagan to testify largely about the industry standard of care. In particular,

Mr. Gagan is expected to testify about "whether Mr. Baldwin [Allstate's agent] provided Mr. Fanucci [Plaintiff's father] with adequate information regarding umbrella policies and the difference between third party bodily injury ('BI') coverage and UIM coverage." Docket No. 93 (Opp'n at 3).

Under Federal Rule of Evidence 702, expert testimony is permitted where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In the instant case, the Court does not find that Mr. Gagan's testimony would assist the trier of fact. The dispute in the instant case is not about whether Mr. Baldwin provided Robert Fanucci with adequate information about umbrella policies or the difference between BI and UIM coverage. Rather, the dispute -- as reflected in the parties' joint pretrial conference statement -- is whether Mr. Baldwin misrepresented to Robert Fanucci that he would secure an umbrella policy providing excess UIM coverage. According to Robert Fanucci, he asked for excess UIM coverage and Mr. Baldwin agreed to provide such. There is no claim based on Mr. Baldwin's failure to take steps (other than fulfill Mr. Fanucci's request) which fell below general industry standards. Because the dispute being tried by the jury focuses on an alleged discrete, concrete act, Mr. Gagan's proposed testimony about general industry standards is irrelevant.

In addition, the Court notes that the parties have stipulated to the following instruction:

> An insurance agent's obligation is normally to purchase the specific coverage requested by his client. The agent normally has no legal duty to recommend any type of coverage to his client, and is not obligated to recommend any specific limits of coverage. A request for adequate coverage, or full coverage, does not create such a duty.
>
> An insurance agent will be liable, however, if one or more of the following circumstances is present:
>
> (1) The applicant made a specific coverage request to the agent, and the agent failed to obtain the requested coverage;
>
> (2) The agent misrepresented or mischaracterized the coverage that was actually purchased; or
>
> (3) The agent held himself out as having a special expertise in a particular subject matter, and failed to secure appropriate coverage under the circumstances.

Given this instruction, any testimony by Mr. Gagan about the legal duties or standard of care owed by an insurance agent would not be helpful; in fact, it would likely be confusing. *See* Fed. R. Evid. 403 (providing that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence").

Accordingly, for both Rule 702 and Rule 403 reasons, the Court **GRANTS** Defendant's motion in limine with respect to Mr. Gagan.

B. <u>Defendant's Motion in Limine No. 2 to Exclude Evidence Regarding Robert Fanucci's Alleged Post-Accident Conversations with Allstate Representatives (Docket No. 86)</u>

Defendant has moved to exclude evidence regarding conversations between Robert Fanucci and Allstate representatives that occurred after Plaintiff's accident. Defendant contends that the conversations are irrelevant because they occurred after the accident and Robert Fanucci could not have relied on the conversations back when he first obtained the insurance. Defendant also argues that the evidence lacks foundation, is hearsay, and is highly prejudicial. In turn, Plaintiff argues that

> the purpose of such testimony is not to show that Robert Fanucci relied on [the] representations [made by the representatives or to show that Defendant actually issued UIM coverage in the amount of $1 million]. Rather, the purpose is to show Robert Fanucci's state of mind in believing that he had obtained an additional $1 million of underinsured motorist coverage back in 1987 and that such a belief was reasonable.

Docket No. 94 (Opp'n at 2).

The Court agrees with Plaintiff's contention that evidence that Robert Fanucci communicated with Defendant and asserted that he had excess UIM coverage is relevant to his state of mind as it relates to his earlier interaction with Mr. Baldwin. However, any statements by representatives in response to his assertions are irrelevant because they occurred post-accident. Accordingly, the Court **GRANTS** in part and **DENIES** in part this motion in limine. Robert Fanucci may testify about his own assertions evidenced in oral conversations and in writing, but he may not testify about any responses made by Defendant's representatives.

8

C. <u>Defendant's Motion in Limine No. 3 to Exclude Evidence Regarding the Handling of the Insurance Claim (Docket No. 87)</u>

Defendant has moved to exclude any evidence relating to its handling of Plaintiff's UIM claim, including evidence regarding any length of time that elapsed before Plaintiff was paid. Defendant argues that the evidence is both irrelevant and highly prejudicial. In her response to Defendant's motion, Plaintiff states that she does not intend to present any of the evidence that Defendant seeks to preclude. Accordingly, the third in limine motion is moot.

## VII. <u>WITNESSES</u>

A. <u>Plaintiff</u>

For her case-in-chief, Plaintiff intends to call or may call, if the need arises, the following witnesses.

1. Robert Fanucci.
2. Michael Baldwin.
3. Layla Fanucci.

B. <u>Defendant</u>

For its case-in-chief, Defendant intends to call or may call, if the need arises, the following witnesses.

1. Michael Baldwin.
2. Robert Fanucci.
3. Layla Fanucci.
4. Mark Goodman.
5. Peter Hinton.

C. <u>Deposition Testimony</u>

The parties have stated in their joint pretrial conference statement that they do not intend to present discovery excerpts at trial, other than for impeachment and rebuttal.

///
///
///

## VIII. WRITTEN DISCOVERY RESPONSES & EXHIBITS

A. Written Discovery Responses

The parties have stated in their joint pretrial conference statement that they do not intend to present discovery excerpts at trial, other than for impeachment and rebuttal.

B. Exhibits

The parties have stipulated to certain undisputed facts as set forth in their joint pretrial conference statement.

The parties have also stipulated to the use of photocopies in lieu of original documents.

The parties expect to stipulate to the authenticity and admissibility of the documents listed on their exhibit lists.

## IX. DEMONSTRATIVES

A. The parties shall meet and confer in advance (prior to the date of demonstration) and exchange demonstratives to avoid objections. Any objections shall be brought to the Court's attention before 4:00 p.m. the day prior to being exhibited.

## X. JURY QUESTIONNAIRE, JURY VOIR DIRE, JURY INSTRUCTIONS & VERDICT FORM

A. Short Statement to Potential Jurors

The Court shall read to the potential jurors a short statement about the case prior to voir dire. The parties shall file a joint proposed statement by November 24, 2009.

B. Jury Questionnaire and Voir Dire

The Court shall not use a jury questionnaire but shall voir dire the potential jurors (taking into account the proposed voir dire submitted by the parties). The Court has already described in its last Case Management Conference order the list of standard questions it intends to ask. The Court shall also give each party a brief opportunity to voir dire the potential jurors after questioning by the Court.

///

///

///

C.  <u>Jury Instructions</u>

By November 24, 2009, the parties shall file with the Court a list of stipulated facts to be read to the jury (either as part of the preliminary instructions, part of the final jury instructions, or both).

The Court shall provide the parties with the Court's proposed jury instructions in advance of the first day of trial. By 12:00 Noon, November 25, 2009, the parties shall file any objections to the Court's proposed jury instructions. The parties should be prepared to discuss jury instructions at the close of the first day of trial.

D.  <u>Verdict Form</u>

The Court defers ruling on a final verdict form until after the jury instructions are resolved.

This ruling disposes of Docket Nos. 77 and 85-87.

IT IS SO ORDERED.

Dated: November 18, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge